**WO**                                                                                          SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Torrez, | No. CV 10-2093-PHX-MHM (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Corrections Corporation of America, et al., | |
| Defendants. | |

Plaintiff David Torrez, a California inmate confined in the La Palma Corrections Center (LPCC), a Corrections Corporation of America (CCA) facility in Eloy, Arizona, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*. (Doc. 1, 3.) The Court will dismiss the Complaint with leave to amend.

**I.     Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $8.83. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

/ / /

**JDDL-K**

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951. But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 611 F.3d 1202, 1202 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

1    If the Court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the action. See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*). The Court should not, however, advise the litigant how to cure the defects. This type of advice "would undermine district judges' role as impartial decisionmakers." Pliler v. Ford, 542 U.S. 225, 231 (2004); see also Lopez, 203 F.3d at 1131 n.13 (declining to decide whether the court was required to inform a litigant of deficiencies). Plaintiff's Complaint will be dismissed for failure to state a claim with leave to amend because the Complaint may possibly be saved by amendment.

**III.   Complaint**

Plaintiff alleges three counts for denial of access to the courts and due process. Plaintiff sues CCA and the following LPCC employees: Captain Mark Reed; Unit Manager June Horrisberger; and Grievance Co-ordinator Ruth Allridge-Williams. Plaintiff seeks declaratory, compensatory, and punitive relief.

Plaintiff alleges the following facts: On March 14, 2007, CCA established Inmate/Resident Grievance and Inmate/Resident Property Policies, Policy 14-5 and Policy 14-6, respectively. Each policy became effective on June 1, 2008.

On July 8, 2008, Plaintiff was transferred by the California Department of Corrections and Rehabilitation (CDCR) to Arizona pursuant to a contract between CDCR and CCA. On September 8, 2008, Plaintiff's property, which had also been transferred, was inventoried. On September 13, 2008, Plaintiff was transferred to LPCC with his property. On October 15, 2008, Plaintiff was transferred to "Compound 2 TEWA Alpha" of LPCC. The next day, Plaintiff reported to Case Manager Hicks to retrieve his property. Plaintiff discovered that some of his property, apparently consisting solely of legal documents and records, was missing. Hicks was unable to locate the documents despite repeated attempts. Plaintiff filed grievances and a lost property claim against "the defendant" in an attempt to recover his property or its value. However, the grievance and lost property claim were repeatedly lost

1  by Grievance Co-ordinator Allridge-Williams. She also failed to timely respond to Plaintiff's
2  grievances under prison policy.

3  Plaintiff filed a "LOST/DAMAGED/STOLEN PERSONAL PROPERTY CLAIM"
4  form (14-6D) on December 10, 2008. On November 9, 2009, a CDCR official, J. Hirai,
5  advised Plaintiff that he could petition the sentencing court directly for recall consideration.
6  Plaintiff contends that he is unable to seek recall consideration because the documents that
7  must be submitted to the court were among those lost. On July 15, 2010, Cathy Dreyfuss of
8  the California DNA Project sent Plaintiff a letter and asked him to send a number of
9  documents, apparently all of which were part of the documents lost.

10 Plaintiff contends that "Defendant(s)" have acted with indifference to his rights by
11 failing to follow CCA policies regarding Lost/Damaged/Stolen Personal Property. Further,
12 he contends the loss of his documents has violated his constitutional right of access to the
13 courts. He also alleges that "Defendant(s)" have imposed an atypical hardship on him by
14 failing to ensure adherence with policies and procedures regarding grievances and inmate
15 property. In addition, he alleges that despite established procedures, Defendants Reed,
16 Horrisberger, and Alldridge-Williams have imposed an atypical hardship on him by failing
17 to adhere to those policies and procedures.

**IV.    Failure to State a Claim**

19 To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the
20 conduct about which he complains was committed by a person acting under the color of state
21 law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v.
22 Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that he
23 suffered a specific injury as a result of the conduct of a particular defendant and he must
24 allege an affirmative link between the injury and the conduct of that defendant. Rizzo v.
25 Goode, 423 U.S. 362, 371-72, 377 (1976).

26 To state a claim against a defendant under § 1983, "[a] plaintiff must allege facts, not
27 simply conclusions, that show that an individual was personally involved in the deprivation
28 of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). For an

JDDL-K

- 4 -

1  individual to be liable in his official capacity, a plaintiff must allege that the official acted
2  as a result of a policy, practice, or custom. See Cortez v. County of Los Angeles, 294 F.3d
3  1186, 1188 (9th Cir. 2001). Further, there is no *respondeat superior* liability under § 1983,
4  so a defendant's position as the supervisor of a someone who allegedly violated a plaintiff's
5  constitutional rights does not make him liable. Monell v. Dep't of Soc. Servs., 436 U.S. 658,
6  691 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his
7  individual capacity, "is only liable for constitutional violations of his subordinates if the
8  supervisor participated in or directed the violations, or knew of the violations and failed to
9  act to prevent them." Taylor, 880 F.2d at 1045. In addition, where a defendant's only
10 involvement in allegedly unconstitutional conduct is the denial of administrative grievances,
11 the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior
12 does not amount to active unconstitutional behavior for purposes of § 1983. Shehee v.
13 Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); accord Mintun v. Blades, No. CV-06-139-BLW,
14 2008 WL 711636 at *7 (D. Idaho Mar. 14, 2008); Stocker v. Warden, No.
15 1:07-CV-00589LJODLBP, 2009 WL 981323 at *10 (E.D. Cal. Apr. 13, 2009).

### A.   CCA

Plaintiff sues CCA, a private corporation. Claims under § 1983 may be directed at "bodies politic and corporate." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 686, 688-89 (1978). Under the Civil Rights Act of 1871, Congress intended municipal corporations and other local government units to be included among those persons to whom § 1983 applies. Id. at 2035. That proposition has been extended to corporations that act under color of state law. See Sable Commc's of Cal. Inc. v. Pacific Tel. & Tel Co., 890 F.2d 184, 189 (9th Cir. 1989) (willful joint participation of private corporation in joint activity with state or its agent taken under color of state law).

There are four ways to find state action by a private entity for purposes of § 1983: (1) the private actor performs a public function, (2) the private actor engages in joint activity with a state actor, (3) a private actor is subject to governmental compulsion or coercion, or (4) there is a governmental nexus with the private actor. Kirtley v. Rainey, 326 F.3d 1088,

1093 (9th Cir. 2003). Under the public function test, "the function [performed by the private actor] must traditionally be the exclusive prerogative of the state." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1486 (9th Cir. 1995); see Kirtley, 326 F.3d at 1093; Lee v. Katz, 276 F.3d 550, 554-555 (9th Cir. 2002). A privately owned corporation that operates prisons pursuant to a contract with a state performs a public function that is traditionally the exclusive prerogative of the state. Further, to state a claim under § 1983 against a private entity performing a traditional public function, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. See Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Wall v. Dion, 257 F. Supp.2d 316, 319 (D. Me 2003); see also Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990); Lux by Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989); Iskander v. Village of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982).

CCA performs a traditional public function, i.e., operating a prison. Plaintiff alleges that under the contract with CDCR, CCA must allow Plaintiff to possess personal property and ensure that he has access to the courts. Plaintiff appears to contend that due to the loss of his property and the failure of "defendant(s)" to comply with the "CCA Corporate and Facility Policy," he has been denied access to the courts and due process. These allegations, absent more, are insufficient to state a claim against CCA. Plaintiff does not allege facts to support that CCA's policy has resulted in a violation of his constitutional rights. Rather, he alleges that the individual Defendants' non-compliance with the policy has denied him access to the courts and due process. Accordingly, CCA will be dismissed as a Defendant.

### B. Count I

In Count I, Plaintiff alleges that the loss of his property has denied him access to the California state courts to obtain a reduction of his sentence. Specifically, he alleges that he obtained documents pursuant to the Freedom of Information Act (FOIA) "throughout the years" concerning involuntary intoxication due to medication with which he intended to

support a state post-conviction review petition. (Doc. 1 at 3A.) Due to the loss of his documents, he is unable to lay the foundation for such relief. (Id.) Further, the loss of the documents prevents him from providing requested documents to the California DNA Project. (Id. at 3B.)

The right of meaningful access to the courts prohibits state officials from actively interfering with an inmate's attempt to prepare or to file legal documents. Lewis v. Casey, 518 U.S. 343, 350 (1996). That right, however, only encompasses the right to bring a petition or complaint to federal court and not to discover or even effectively litigate claims once filed with a court. Id. at 354; see Cornett v. Donovan, 51 F.3d 894, 899 (9th Cir. 1995) ("The right of access is designed to ensure that a habeas petition or civil rights complaint of a person in state custody will reach a court for consideration.") The right "guarantees no particular methodology but rather, the conferral of a capability--the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis, 518 U.S. at 356. Moreover, the right of access to the courts is only a right to bring complaints to federal court and not a right to the discovery of such claims or to litigate them effectively once filed with a court. See Id. at 354-55. Further, an inmate must establish that he suffered an "actual injury." Id. at 351-53; see Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir. 1994). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." Lewis, 518 U.S. at 348. In other words, a plaintiff must allege facts to support that a defendant's conduct prevented him from bringing to court a non-frivolous claim that he wished to present. Id. at 351-53. As explained by the United States Supreme Court:

> Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. We indicated as much in our most recent case on denial of access, Lewis v. Casey, supra, where we noted that even in forward-looking prisoner class actions to remove roadblocks to future litigation, the named plaintiff must identify a "nonfrivolous," "arguable" underlying claim, id., at 353, and n. 3, 116 S.Ct. 2174, and we have been given no reason to treat backward-looking access claims any differently in this

    respect. It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

Christopher v. Harbury, 536 U.S. 403, 414-15 (2002) (footnote omitted).

    Plaintiff fails to state a claim for denial of access to the courts. As an initial matter, Plaintiff's allegations at most reflect that the loss of his documents was the result of negligence; negligence is insufficient to state a constitutional claim. Daniels v. Williams, 474 U.S. 327, 333 (1986) (quoting Parratt v. Taylor, 451 U.S. 527, 548 (1981)). Second, Plaintiff fails to allege facts to connect specific Defendant(s) to the alleged denial of access. Finally, he fails to articulate an arguable, or nonfrivolous, underlying claim. For these reasons, Plaintiff fails to state a claim in Count I.

### C. Count II

    In Count II, Plaintiff asserts deprivation of property without due process. Due process claims related to prisoner property commonly arise when property is taken or destroyed by random and unauthorized conduct of a prison official without an opportunity for the prison to provide meaningful predeprivation due process. Under Supreme Court doctrine in Parratt v. Taylor, 451 U.S. 527, 537 (1981), and Hudson v. Palmer, 468 U.S. 517, 530-36 (1984), neither unauthorized intentional nor negligent deprivations of property give rise to a due process claim so long as the State provides an adequate post-deprivation remedy. Thus, the availability of an adequate state post-deprivation remedy, such as a state tort action, for unauthorized deprivations precludes a claim for violation of due process. King v. Massarweh, 782 F.2d 825, 826 (9th Cir. 1986).

    As explained, where a state makes a meaningful post-deprivation remedy available, neither a negligent, nor an intentional, unauthorized deprivation of an inmate's property by a state employee violates the inmate's Fourteenth Amendment right to due process. Parratt, 451 U.S. at 541; Hudson, 468 U.S. at 533. The availability of a common-law tort suit against

1 a private prison employee constitutes an adequate post-deprivation remedy.  Hudson, 468
2 U.S. at 534-35.  Because Plaintiff has an available common-law tort remedy against a private
3 prison employee who deprives him of property, he may not sue under § 1983 for violation
4 of his due process rights for the loss of his property.

### D. Count III

In Count III, Plaintiff asserts that CCA "failed or refused to ensure" that its policies and procedures were complied with by the individual Defendants and that the individual Defendants Reed, Horrisberger, and Aldridge-Williams imposed an "atypical" hardship on him by failing to so comply.  Plaintiff's allegations against CCA are vague and conclusory. Plaintiff otherwise fails to allege a constitutional violation against the individual Defendants. An inmate does not have a protected liberty interest in prison grievance procedures because there is no free-standing constitutional right to a grievance process.  Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 493 (8th Cir. 1993) (*per curiam*); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Rather, liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal citations omitted).  In analyzing whether a hardship is atypical and significant, three guideposts to consider are: (1) the conditions of confinement; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the disciplinary sanction will affect the duration of the prisoner's sentence.  Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003); Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir. 1996).  "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Montanye v. Haymes, 427 U.S. 236, 242 (1976).  Thus, a claim that prison officials "added things" to

1  an appeal to mask procedural errors does not, for example, meet this standard because
2  inmates lack a separate constitutional entitlement to a specific prison grievance procedure.
3  Ramirez, 334 F.3d at 860 (citing Mann, 855 F.2d at 640).

4  Plaintiff alleges that the individual Defendants failed to comply with prison
5  procedures. Absent more, that is insufficient to state a claim.

6  **V.   Leave to Amend**

7  For the foregoing reasons, Plaintiff's Complaint will be dismissed for failure to state
8  a claim upon which relief may be granted. Within 30 days, Plaintiff may submit a first
9  amended complaint to cure the deficiencies outlined above. The Clerk of Court will mail
10 Plaintiff a court-approved form to use for filing a first amended complaint. If Plaintiff fails
11 to use the court-approved form, the Court may strike the amended complaint and dismiss this
12 action without further notice to Plaintiff.

13 Plaintiff must clearly designate on the face of the document that it is the "First
14 Amended Complaint." The first amended complaint must be retyped or rewritten in its
15 entirety on the court-approved form and may not incorporate any part of the original
16 Complaint by reference. Plaintiff may include only one claim per count.

17 A first amended complaint supersedes the original complaint. Ferdik v. Bonzelet, 963
18 F.2d 1258, 1262 (9th Cir. 1992); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542,
19 1546 (9th Cir. 1990). After amendment, the Court will treat an original complaint as
20 nonexistent. Ferdik, 963 F.2d at 1262. Any cause of action that was raised in the original
21 complaint is waived if it is not raised in a first amended complaint. King v. Atiyeh, 814 F.2d
22 565, 567 (9th Cir. 1987).

23 **VI.  Warnings**

24 **A.   Release**

25 Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.
26 Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay
27 the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result
28 in dismissal of this action.

**B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**C.     Copies**

Plaintiff must submit an additional copy of every filing for use by the Court.  See LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.     Possible "Strike"**

Because the Complaint has been dismissed for failure to state a claim, if Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order, the dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

**E.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  See Ferdik, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed *In Forma Pauperis* is **granted**.  (Doc. 3.)

(2)     As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $8.83.

      (3)    The Complaint is **dismissed** for failure to state a claim. (Doc. 1.) Plaintiff has **30 days** from the date this Order is filed to file a first amended complaint in compliance with this Order.

      (4)    If Plaintiff fails to file an amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal may count as a "strike" under 28 U.S.C. § 1915(g).

      (5)    The Clerk of Court must mail Plaintiff a court-approved form for filing a civil rights complaint by a prisoner.

DATED this 22nd day of November, 2010.

_____
Mary H. Murgula
United States District Judge